UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AKBAR GHANEH FARD,

v.                                Case No. 8:17-cr-131-VMC-SPF
                                          8:21-cv-2049-VMC-SPF

UNITED STATES OF AMERICA.

_____/

### ORDER

This matter is before the Court on Akbar Ghaneh Fard's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 203), filed on August 24, 2021. The United States of America responded on January 24, 2022. (Civ. Doc. # 11). Fard replied on March 25, 2022. (Civ. Doc. # 16). For the reasons that follow, the Motion is denied.

### I.   Background

On March 22, 2017, a grand jury indicted Fard on six counts of wire fraud, in violation of 18 U.S.C. § 1343. (Crim. Doc. # 1). A jury trial was conducted, and Fard was found guilty on all charges on February 9, 2018. (Crim. Doc. # 109).

The wire fraud charges concern fraudulent scientific research proposals that Fard submitted to obtain federal funds through the Small Business Innovations Research Program

1

("SBIR") and the Small Business Transfer Technology Program ("STTR"). (Crim. Doc. # 134 at 33). The programs require any federal agency, department, or entity that has a research budget larger than $100 million to set aside part of the research budget for small businesses. (Id.). The SBIR's purpose is to stimulate innovation, promote growth, and encourage commercialization of products by small businesses in the United States. (Id. at 47).

In submitting proposals for SBIR funding, Fard certified that the information he provided, including the budget, was true, and acknowledged that providing false information in his proposals was a federal offense. (Crim. Doc. ## 106-24, 106-44). Despite this, Fard provided false information in his budget proposals. Specifically, although he proposed a seven percent profit, Fard ultimately took a seventy percent profit. (Crim. Doc. # 135 at 46). Fard also stated in his proposals that his business, Advanced Materials Technology, Inc., had two employees, when Fard was the only employee. (Crim Doc. # 138 at 81). Additionally, Fard proposed costs for materials and equipment that were already included in the subcontractor fee. (Crim. Doc. # 136 at 71).

Fard's trial counsel moved for judgment of acquittal three times. (Crim. Doc. # 138 at 20-21, 70; Crim. Doc. #

114). The motion was denied each time. (Crim. Doc. # 138 at 23, 71; Crim. Doc. # 116). On August 23, 2018, the Court sentenced Fard to thirty-six months' imprisonment and three years of supervised release. (Crim. Doc. # 163).

Fard appealed. (Crim. Doc. # 166). The United States Court of Appeals for the Eleventh Circuit affirmed. <u>United States v. Fard</u>, 805 F. App'x 618 (11th Cir. 2020). The Eleventh Circuit wrote in relevant part:

> The district court did not err in denying Fard's motion for judgment of acquittal as sufficient evidence supports his convictions. Throughout the trial, the jury heard how Fard was warned that lying in the proposals was illegal, and how the contracting officers relied on the statements made by Fard, they negotiated with Fard to ensure the budgets and research met the agencies' needs, and entered a final agreement, which required modifications to be made with the contracting officers. Further, the jury heard from Special Agent Mazzella about how the awards were Advanced Material Technology, Inc.'s (AMTI's) only source of income, Fard's spending was inconsistent with the information in the budgets, and Fard diverted approximately 70 percent of the funds awarded to AMTI. From the combination of Fard's obligations and actual spending, the Government presented sufficient evidence to show that Fard had made material misrepresentations to the agencies. From his success in obtaining the awards, the jury could also conclude that Fard's statements had the natural tendency of influencing those in charge of granting the awards. Additionally, the jury could conclude the agencies were harmed and did not receive the benefits of their bargaining with Fard. From both NASA and the Navy representatives, the jury heard how Fard's intentional misrepresentations resulted

> in the agencies awarding funds they otherwise would
> not have, thereby undermining the purpose of the
> programs to stimulate innovation and economic
> growth.

Id. at 619–20 (citations omitted).

Fard has now filed the instant motion pursuant to 28 U.S.C. § 2255. (Civ. Doc. # 1). The United States has responded (Civ. Doc. # 11), and Fard has replied (Civ. Doc. # 16). The Motion is ripe for review.

## II.   **Legal Standard**

Fard bears the burden of proving that he is entitled to relief under Section 2255. Rivers v. United States, 777 F.3d 1304, 1316 (11th Cir. 2015).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Fard must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (citations omitted). In other words, Fard must show that "no competent counsel would have taken the

action that his counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Fard must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "However, if a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." Ortiz v. United States, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

## III. **Analysis**

In his Motion, Fard advances two grounds for post-conviction relief, both based on ineffective assistance of counsel. (Civ. Doc. # 1 at 4-5).

## A.  <u>Ground One</u>

First, Fard argues that his trial counsel, Bruce H. Lehr, was ineffective because he failed to: (1) investigate the facts, law, and evidence; (2) obtain, develop, and present exculpatory evidence; (3) confront and impeach the government's witnesses; (4) investigate, interview, and call favorable defense witnesses; (5) file a pre-trial motion to dismiss the indictment; and (6) adequately and effectively argue a Rule 29 motion. (Civ. Doc. # 1 at 4).

### 1. <u>Investigation and Exculpatory Evidence</u>

Regarding Lehr's investigation, Fard argues that Lehr failed to investigate the contracts and subsequently failed to present exculpatory evidence. (Civ. Doc. # 2 at 4). Fard also contends that Lehr failed to investigate and produce evidence that demonstrated that the proposed costs were estimates, and that the General and Administrative ("G & A") rates were not fraudulent. (<u>Id.</u> at 6, 14). Additionally, Fard claims that Lehr failed to investigate and present evidence pertaining to the NASA SBIR and STTR Program Solicitations, the Federal Acquisition Regulations ("FAR"), and the government SBIR website. (<u>Id.</u> at 9).

Fard has not shown that Lehr was ineffective for failing to investigate or present the evidence to which Fard cites in

his memorandum. First, counsel is not ineffective for choosing not to investigate or present every bit of potential evidence. See Strickland, 466 U.S. at 690-91 (finding that "[s]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"); see also Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (recognizing that "there is no absolute duty to investigate particular facts or a certain line of defense").

More importantly, Lehr swore in his affidavit that he "fully familiarized [himself] with all the discovery provided by the Government" and "explored all possible defenses," supporting that Lehr did investigate the case. (Civ. Doc. # 11-1 at 2). Lehr also met with Fard in person to go over the discovery and Fard's theories of innocence. (Id. at 3). But "[e]ach of [Fard's] theories only showed him to be more guilty of the allegations." (Id. at 2). According to Lehr, "[w]hat [Fard] refused to accept or comprehend was that he made numerous representations to the government to be awarded grants; they were blatantly false; when the investigation took place, he blatantly lied, and then spent the monies of the grants for everything from groceries to household items

instead of the purposes for which they were awarded." (Id. at 3). Nevertheless, despite Lehr's belief that the government's case was "tremendous[ly]" strong, he hired and called an expert witness to testify to Fard's interpretation of the contracts: that once the grant monies "were received the grantee was free to do what he wished with the funds." (Id. at 3-4).

Thus, the record reflects that Lehr reviewed all relevant discovery, investigated the defense theories proposed by his client, and determined those theories to be meritless. Under these circumstances, the Court cannot hold that Lehr's representation was ineffective. See Bryant v. United States, No.: 2:10-cv-8044-RDP-JHE, 2013 WL 4079339 at *9 (N.D. Ala., Aug. 13, 2013) (explaining that trial counsel's affidavit demonstrated that petitioner's conclusory claims lacked merit because counsel "had sufficient time to investigate the case, meet with his client, and obtain necessary information").

Regardless, even if Lehr was ineffective, the Court does not find prejudice. As this Court and the Eleventh Circuit have previously held, the government provided strong evidence that Fard made material misrepresentations to the agencies and Fard's arguments to the contrary are unconvincing. See

_Fard_, 805 F. App'x at 620 (holding that a reasonable jury could conclude that Fard made material misrepresentations to government agencies that harmed those agencies); _see also United States v. Aldissi_, 758 F. App'x 694, 708 (11th Cir. 2018) (explaining that "[w]hile the FAR does apply to a certain extent to SBIR/STTR, other rules also govern these types of awards").

### 2. **Confront and Impeach Government's Witnesses**

Next, Fard asserts that Lehr failed to confront and impeach the government witnesses and reveal that the government presented false testimony. (Civ. Doc. # 2 at 2). Specifically, Fard argues that the government presented false testimony that (1) Fard submitted a fraudulent G & A Rate, (2) Fard charged SBIR/STTR contracts with business entertainment expenses, (3) Fard was entitled to receiving only seven percent of the value of the contract as profit, and (4) Fard undermined the purpose of the SBIR/STTR programs. (_Id._ at 39). He asserts that Lehr should have presented evidence to demonstrate the alleged falsity of this testimony. (_Id._).

However, as an initial matter, Fard has not proven that this testimony was false. The testimony of the government witnesses was credible and consistent with the independent

evidence establishing Fard's guilt. See United States v. Georgiou, No. CR 09-88, 2018 WL 9618008, at *44 (E.D. Pa. June 19, 2018) (explaining that the petitioner had not established prejudice based on counsel's alleged failure to impeach a witness because the claim that the witness testified falsely was conclusory and against the weight of the evidence).

For instance, Fard contends that Special Agent Mazzella, Carlos Torrez (the SBIR/STTR program manager at NASA), Libby Romaguera (a contracting officer at NASA), and Brad Binder (a contract specialist at NASA) lied about their interpretations of Fard's SBIR/STTR contracts. Not only are Fard's allegations entirely conclusory, but there is evidence to support their testimony that the contract estimates were binding. For example, Fard acknowledged that providing false information in his proposals for the SBIR contracts was a federal offense. (Crim. Doc. ## 106-24, 106-44). Additionally, the government's witnesses provided largely consistent testimony. See Honken v. United States, 42 F. Supp. 3d 937, 172 (N.D. Iowa 2013) (finding that testimony was not false when witnesses' testimony was "extraordinarily consistent"). Because Fard has not proven that the testimony was false, he cannot show prejudice.

Likewise, Fard has not shown that Lehr was ineffective for failing to prove that the testimony was false. Lehr acted reasonably and did cross-examine and impeach some of the government's witnesses, including Special Agents Mazzella and Matteis, among others. (Doc. # 135 at 48-75; Doc. # 137 at 123-24). For example, at one point, Lehr challenged government witness Torrez by asking him what language in the contracts made the estimates binding. (Crim. Doc. # 135 at 142).

Additionally, even if Lehr performed poorly when cross-examining the government witnesses, he hired and called an expert witness to testify to Fard's interpretation of the contracts. That is, he presented the testimony of an expert that conflicted with the government witnesses' testimony and interpretations of the contracts. Therefore, the Court cannot find that Lehr was ineffective. See Honken, 42 F. Supp. 3d at 1024 (finding no ineffective assistance of counsel when trial counsel called witnesses to support the movant's version of events).

### 3. Failure to Call Favorable Witnesses

Fard also argues that Lehr was ineffective because "Lehr failed to conduct any investigation on [four] potential defense witnesses," and "[h]ad Lehr called these government

officials to testify, they would have provided exculpatory testimony." (Civ. Doc. # 2 at 14). Although Fard names these potential witnesses, his allegations are conclusory and insufficient to establish either ineffectiveness or prejudice. See Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (per curiam) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)).

First, the decision to call a witness is typically a strategic decision and there is a strong presumption that declining to call the witness was "sound trial strategy." Place v. United States, No. 09-10152-NMG, 2014 WL 2803740, at *3 (D. Mass. June 20, 2014); see also Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."). Here, while he did not call the potential witnesses Fard names, Lehr called an expert to testify to Fard's interpretation of the contracts. Therefore, Fard has not shown that Lehr was unreasonable in his choice of which witnesses to present at trial.

Furthermore, Fard does not identify what exculpatory evidence the potential witnesses would have provided through their testimony. See Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007) (explaining that "[o]rdinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim"). Indeed, Fard did not submit affidavits from the potential witnesses setting forth their possible testimony. See Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009) (holding that the district court did not err in denying claim for ineffective assistance of counsel when movant did not provide an affidavit setting forth the testimony of the potential witness). Because Fard did not specify what testimony the potential witnesses would have provided, he has not shown prejudice.

### 4. Motion to Dismiss the Indictment

Next, Fard claims that Lehr "should have filed a motion to dismiss the [indictment] because the alleged scheme in wire fraud charges did not amount to a crime." (Civ. Doc. # 2 at 26-27).

First, the Court notes that, while Lehr did not move to dismiss the indictment based on the argument that Fard's

13

scheme was not a crime, he did move to dismiss two counts on statute of limitations grounds. (Crim. Doc. # 89). This suggests that Lehr made a reasonable strategic decision to pursue certain arguments in a motion to dismiss rather than others. See United States v. Hinds, 2 F. App'x 420, 423 (6th Cir. 2001) ("Trial strategy includes the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous.").

And to establish prejudice, Fard must show a reasonable probability that, had a motion to dismiss the indictment been filed, it would have been granted. See Zeigler v. Crosby, 345 F.3d 1300, 1308-09 (11th Cir. 2003) (explaining that the defendant had to show a reasonable probability that, had a motion to dismiss the indictment been filed, it would have been granted). This he cannot do.

Notably, Lehr moved for a Rule 29 judgment of acquittal and raised similar arguments regarding Fard's scheme on three separate occasions, and each time the motion was denied. (Crim. Doc. # 138 at 20-21, 23, 70-71; Crim. Doc. # 114; Crim. Doc. # 116). The Eleventh Circuit affirmed, holding that this Court did not err in denying Fard's motion for judgment of acquittal. Given the merit of the charges against Fard, Fard has not shown that a motion to dismiss the indictment would

14

have had a reasonable probability of being granted. See Rollins v. United States, No. 08-cv-665-DRH, 2011 WL 3667522, at *5 (S.D. Ill. Aug. 21, 2011) (finding that "[t]here [was] no evidence to suggest a motion to dismiss the indictment would have been meritorious at any stage of the trial").

In short, Lehr was not ineffective for failing to file a pre-trial motion to dismiss the indictment arguing that Fard committed no crime and Fard was not prejudiced by such failure. Such motion would have been meritless. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (stating that no ineffective assistance of counsel exists when an attorney fails to preserve a meritless issue).

### 5. **Rule 29 Motion**

Fard also alleges that Lehr failed to argue the Rule 29 motion for judgment of acquittal adequately and effectively. (Civ. Doc. # 2 at 27-29). Fard contends that Lehr failed to argue in his Rule 29 motion that the commercialization goal of the SBIR program was achieved, that the government got the full benefit of the bargain, and that the purpose of the program was not undermined by Fard's conduct. (Id.). Additionally, Fard claims that Lehr failed to demonstrate that the estimated costs were not binding and that the

SBIR/STTR fixed price contracts were the same as regular fixed price contracts. (Id. at 29).

First, Lehr raised many related arguments in his supplemental motion for judgment of acquittal, including that Fard's budget proposals were just estimates, that the G & A rate used by Fard was not fraudulent, the government "got what it paid for" and suffered no loss, and that there was nothing in the government's evidence that limited Fard's ability to spend the money. (Crim. Doc. # 114). Although Fard takes issue with Lehr's framing of arguments in the motion for judgment of acquittal, Fard falls far short of establishing that Lehr's performance related to the Rule 29 motion was unreasonable or ineffective.

Regardless, Lehr's alleged failure to adequately argue the issues referred to above did not prejudice Fard because the Court would have denied the motion for judgment of acquittal even if these arguments were raised as Fard wished. See Johnson v. United States, No. 2:09-cv-647-JES-SPC, 2012 WL 2996593, at *5-6 (M.D. Fla. July 23, 2012) (holding that there was no ineffective assistance of counsel when there was no reasonable probability that a sufficiency of the evidence challenge would have prevailed). The Eleventh Circuit agreed with this Court that the government's evidence was sufficient

to uphold Fard's conviction. <u>Fard</u>, 805 F. App'x at 620. The appellate court also determined that a jury could conclude that the agencies did not receive the benefit of their bargain, and that Fard undermined the purpose of the programs. <u>Id.</u> None of Fard's arguments would have altered the Court's conclusion that Fard's conviction should be upheld.

Fard has not established ineffective assistance by Lehr regarding this or any other argument. His Motion is denied as to his first ground.

### B.   <u>Ground Two</u>

Next, Fard argues that his appellate counsel, Orlando do Campo, was ineffective for failing to do three things: (1) investigate and review the record and argue that the government's theory of prosecution was wrong and Fard's conviction was based on false testimony; (2) raise the issue that Fard's conviction was in conflict with the Eleventh Circuit Court's holding in <u>White v. United States</u>, 765 F.2d 1469 (11th Cir. 1985); and (3) raise the issues of government misconduct and deprivation of due process rights.

### 1. <u>Investigation and Evidence</u>

First, Fard alleges that do Campo was ineffective for failing to investigate the record and failing to argue that there was no scheme to defraud. (Civ. Doc. # 2 at 30). But,

as the government notes, the argument that there was no scheme to defraud "was raised in his appeal" — along with arguments that Fard made no misrepresentations and the evidence at trial was insufficient to sustain his conviction — "and [was] rejected by the Eleventh Circuit." (Civ. Doc. # 11 at 16). Fard's allegation that do Campo failed to investigate the record is conclusory and contradicted by the fact that do Campo did brief multiple issues on appeal. See Edwards v. Jackson, No. 3:08-cv-584-RJC, 2012 WL 137413, at *6 (W.D.N.C. Jan. 18, 2012) (finding that petitioner's allegations were conclusory, as he failed to show how any further investigation by appellate counsel would have altered the outcome of petitioner's appeal).

Even if appellate counsel had not investigated and raised this argument, appellate counsel is not required to raise meritless issues on appeal. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). Additionally, an appellate advocate does not have to raise every nonfrivolous issue. Jones v. Barnes, 463 U.S. 745, 753-54 (1983). Rather, "effective advocates 'winnow out' weaker arguments even though the weaker arguments may be meritorious." Heath v. Jones, 941 F.2d 1126, 1131 (11th Cir.

1991). Even if appellate counsel is deficient, failure to raise an argument on appeal is not prejudicial unless the neglected argument would have a reasonable probability of success on appeal. Id. at 1132.

But the arguments that the government's theory was wrong and that Fard's conviction was based on false testimony lack merit. Again, the government's theory on Fard's scheme to defraud was correct, and Fard has not proven that the government's witnesses provided false testimony.

### 2. Conflict with Eleventh Circuit Precedent

Regarding the second argument, Fard asserts that do Campo was ineffective because he failed to argue that Fard's conviction conflicted with the Eleventh Circuit's holding in White. (Civ. Doc. # 2 at 35). This argument also lacks merit.

First, as the government points out, "[a]ppellate counsel did cite to the White case [in] its brief, argued White's application to Dr. Fard's case, and noted a key distinction: White did not involve SBIR or STTR contracts, the type involved in Dr. Fard's case." (Civ. Doc. # 11 at 16). Thus, Fard has failed to show ineffectiveness on the part of do Campo.

Even if he had not addressed White on appeal, appellate counsel is not required to raise meritless issues. Here, the

issue is meritless because White does not weigh against Fard's conviction. Fard contends that the "fixed price" contracts in White are the same as the "fixed price" contracts in this case. (Civ. Doc. # 2 at 35). However, unlike in White, the "fixed price" contracts in this case are governed by SBIR/STTR regulations.

### 3. **Due Process Rights**

Finally, Fard asserts that do Campo was ineffective because do Campo did not raise the issue of government misconduct and deprivation of due process rights. (Civ. Doc. # 2 at 30). Fard alleges that the government "engaged in misconduct that rendered [his] trial and the resulting judgment of conviction and sentence fundamentally unfair." (Id. at 35). According to Fard, the government's witnesses presented false testimony and the government capitalized on that false testimony. (Id. at 36).

Again, this argument fails. Fard has not shown that the government presented false testimony. As mentioned previously, these witnesses' conclusion that the budget estimates were binding was a reasonable interpretation of the regulations governing Fard's contracts. Additionally, a vast amount of evidence supports the conclusion that Fard submitted a fraudulent G & A rate in his proposals. Fard also

has not shown that an argument based on alleged government misconduct was stronger than the arguments appellate counsel did make. See Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003) ("As the Supreme Court has recently observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" (quoting Smith v. Robbins, 528 U.S. 259, 289 (2000))).

The Court agrees with the government that "[t]here is absolutely nothing in the trial or appellate record of this case to suggest that Dr. Fard received anything but a fair trial before a jury of his peers." (Civ. Doc. # 11 at 17). Thus, Fard has not established ineffective assistance of counsel by appellate counsel.

The Motion is denied as to ground two.

## IV.  **Evidentiary Hearing**

As the Court was able to readily determine that the claim lacks merit, no evidentiary hearing is required. See 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not necessary if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no

relief"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015)("To establish that he is entitled to an evidentiary hearing, Hernandez had to allege facts that would prove that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance.").

## V.  **Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied**

The Court declines to issue a certificate of appealability because Fard has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Fard to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Fard shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Akbar Ghaneh Fard's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 203) is **DENIED.** The Clerk is directed to enter judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>2nd</u> day of August, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE